Erin Marie CALNAN *v.* STATE of Arkansas

CR 92-189                                   841 S.W.2d 593

Supreme Court of Arkansas
Opinion delivered November 2, 1992

*Smith, Norwood & Smith, P.A.*, by: *Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Erin Marie Calnan, was convicted of first-offense DWI, disorderly conduct, and as a result of her refusal to take a breathalyzer test, violation of the implied consent law. She was sentenced to two days in jail with credit for one day served and fined $250 plus costs for the DWI conviction. For the disorderly conduct conviction Calnan was fined $50 and sentenced to two days in jail to run concurrently with the other sentence, and she was given the same one day credit. For violation of the implied consent law, her driver's license was suspended for six months.

Ms. Calnan argues the Trial Court erred by (1) violating her right to a jury trial with respect to the DWI conviction, and (2) violating her right to due process by refusing to allow her to obtain an independently administered blood test. We find reversible error on the first point and remand for a new trial. We discuss the second point to assist the Trial Court upon retrial.

On January 10, 1990, at approximately 1:30 a.m., Calnan was stopped by Officer Ron Largent of the Rogers Police Department, who had observed her driving erratically and speeding. Office Largent testified he smelled alcohol on Calnan's breath and when he asked her to get out of the car she staggered. He administered field sobriety tests to Calnan, and based on her difficulty with each test, Calnan was arrested for DWI.

After Ms. Calnan was informed she was under arrest, she began yelling and cursing Officer Largent. She requested permission to make a phone call. While she was on the phone, Officer Largent informed her that, due to her condition, she would not be released until the next morning. Officer Largent testified that at that point it became necessary to take the phone away from her for fear she would yank it from the wall. He also testified that Calnan kicked and pushed him. He and another officer restrained her.

Officer Largent requested that Calnan take a breathalyzer test, but she refused and demanded to be taken to the hospital for a blood alcohol test. Officer Largent testified that he refused to comply as he was not required to do so in view of her refusal to take the breathalyzer test and that "she was just totally too combative and abusive to be taken to the hospital." Ms. Calnan was later taken to the Benton County Jail for the remainder of the night.

Ms. Calnan was tried in Rogers Municipal Court and found guilty of DWI, disorderly conduct, violation of the implied consent law, and speeding. She appealed to the Circuit Court and was found guilty of all charges but speeding in a *de novo* bench trial. There was no mention by either party or the Court of trial by jury.

### 1. Jury trial

Ms. Calnan argues that she did not waive her right to a trial by jury, and thus the case should be reversed as her right to trial by jury was violated.

Arkansas Const. art. 2, § 7, provides in relevant part:

> The right to trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the

amount in controversy; *but a jury trial may be waived by the parties in all cases in the manner prescribed by law.* . . . [emphasis added].

The manner prescribed by law for a defendant in a criminal trial to waive the right to a jury trial is set out in Ark. R. Crim. P. 31.1, .2, and .3. Rule 31.2 states:

Should a defendant desire to waive his right to trial by jury, he must do so personally either in writing or in open court. A verbatim record of any proceedings at which a defendant waives his right to a trial by jury shall be made and preserved.

■■ The law is clear that the only way a defendant may waive the jury trial right is by personally making an express declaration in writing or in open court and that the open court proceedings where the defendant waives his or her right must be preserved. That did not occur here. In *Fretwell* v. *State*, 289 Ark. 91, 708 S.W.2d 630 (1986), we wrote "Criminal cases which require trial by jury *must* be so tried unless (1) waived by the defendant, (2) assented to by the prosecutor, and (3) approved by the court. The first two requirements are mandatory before the court has any discretion in the matter."

Our clearest expression that a criminal defendant bears no burden of demanding a trial by jury under our constitution and law came in *Elmore* v. *State*, 305 Ark. 426, 809 S.W.2d 370 (1991). We stated "There was no need for Elmore to demand or move for a trial by jury, much less obtain a ruling on the issue, thus the trial court erred in not honoring Elmore's right to be tried by a jury."

■ No doubt we have a contemporaneous objection rule, which requires objection at the trial level in order to preserve an argument for appeal. *Smith* v. *State*, 310 Ark. 30, 832 S.W.2d 497 (1992); *Miller* v. *State*, 309 Ark. 117, 827 S.W.2d 149 (1992). The contemporaneous objection rule applies even with respect to denial of constitutional rights. *Moore* v. *State*, 303 Ark. 514, 798 S.W.2d 87 (1990); *Smith* v. *State*, 296 Ark. 451, 757 S.W.2d 554 (1988). In the case of the right to jury trial, however, the Constitution provides that it may be waived "by the parties in all cases in the manner prescribed by law."

█ The Constitution thus expresses the only manner in which the right can be lost, that is, by waiver. "Waiver" is an "intentional relinquishment of a known right." *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). We have followed the familiar doctrine of *expressio unius est exclusio alterius* since our first volume of reported decisions. It means if the Constitution expresses one exception to a general provision, other exceptions are excluded. We first applied the doctrine in *Hall* v. *State*, 1 Ark. 201 (1838). It remains viable and governs in this case. The constitutional right to a jury trial cannot be lost by forfeiture. It can only be waived. It is otherwise to remain "inviolate."

The State argues that our decision in *Griggs* v. *State*, 280 Ark. 339, 658 S.W.2d 371 (1983), holds that a defendant must raise in the trial court the denial of the constitutional right to a jury trial to preserve the argument for appeal. There the defendants did not contend that they did not waive their right to a jury trial in accordance with the law. They argued only that their waiver was omitted from the record. In affirming, we cited the contemporaneous objection rule but noted that the issue being decided was not a constitutional one. While it does appear that we used the contemporaneous objection rule to overcome failure to comply with the "preservation" aspect of Rule 31.2, our opinion consisted of less than one page, and it is apparent that no consideration was given to the Rule and the constitutional requirement that a jury trial remain inviolate unless waived by the parties as provided by law.

█ There are four exceptions to the contemporaneous objection rule. They occur (1) when, in a death penalty case, a trial court fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) when a trial court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) when a trial court should intervene on its own motion to correct a serious error; and (4) when the admission or exclusion of evidence affects a defendant's substantial rights. *Wick* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The third exception applies in this case. There need be no contemporaneous objection to raise an issue on appeal if otherwise a serious error will result.

█ Our Court of Appeals held in a civil case that the right

to a jury trial is so fundamental that if it is denied a serious error results. *Bussey* v. *Bank of Malvern*, 270 Ark. 37, 603 S.W.2d 426 (Ark. App. 1980). The principle applies equally, if not more so, to a criminal trial.

■ In every criminal trial where there is a right to trial by jury, the court should proceed as if a jury were to be used unless waiver takes place in accordance with the law. That was the intent, clearly expressed, of our opinion in *Elmore* v. *State, supra.* The burden is on the trial court to assure that, if there is to be a waiver of the right to a jury trial in a criminal case, it be done in accordance with the Rule by which we have implemented our Constitution.

The Arkansas Constitution and Rules of Criminal Procedure assume a defendant will be tried by a jury unless that right is expressly waived. The law providing the manner of waiver is obviously designed to assure that the jury trial right is not forfeited by inaction on the part of a defendant. The contemporaneous objection rule does not apply in this circumstance and the conviction must be reversed.

## 2. Constitutionality of the statute

The argument here is that Ms. Calnan was deprived of due process of law because she was not allowed to go to a hospital to obtain a blood test. Our law permits a person who has been subjected to a breathalyzer test to obtain an independent second test. Arkansas Code Ann. § 5-65-204(e) (Supp. 1991) provides in relevant part:

> (e) The person tested may have a physician or a qualified technician, registered nurse, or other qualified person of his own choice administer a complete chemical test in addition to any test administered at the direction of a law enforcement officer.

> \* \* \*

> (2) The refusal or failure of a law enforcement officer to advise such person of this right and to permit and assist this person to obtain such test shall preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer.

■ As the breathalyzer test was refused by Calnan, there was no requirement that an independent chemical test be afforded her pursuant to the Statute. *McEntire* v. *State*, 305 Ark. 470, 808 S.W.2d 762 (1991). The Statute is clear that an independent test should be made available *in addition* to tests administered at the law enforcement officer's direction.

In *Patrick* v. *State*, 295 Ark. 473, 750 S.W.2d 391 (1988), we held that a defendant's due process rights were not violated when he was not informed of his right to an independent test for intoxication. We stated that Patrick did not have a right to an independent chemical test because he was not given a test at the direction of the law enforcement officer.

In *Grayson* v. *State*, 30 Ark. App. 105, 783 S.W.2d 75 (1990), the Court of Appeals dealt with a similar issue. The Court of Appeals held that pursuant to Ark. Code Ann. § 5-65-204(e)(2) the remedy for a person who is not afforded the opportunity to obtain an additional test is the exclusion of any chemical test taken at the direction of the law enforcement officer. The Court of Appeals wrote, "It naturally follows that appellant, in not having any test results introduced into evidence against him, was not deprived of the right the statute cited [5-65-204(e)] is intended to insure." *See also Fletcher* v. *City of Newport*, 260 Ark. 476, 541 S.W.2d 681 (1976).

■ Nor can we accept the contention that the Statute is unconstitutional because it prohibited Ms. Calnan from gathering evidence. We know of no authority, other than the law of mandatory bail, which is not at issue here, requiring that a defendant who has been arrested for an offense be let out of jail to gather evidence.

Reversed and remanded.

GLAZE, J., dissents for most of the same reasons set out in the dissenting opinion in *Winkle* v. *State*, 310 Ark. 713, 841 S.W.2d 589 (1992). Hays and Brown, JJ., join in the dissent in this case as well.

ROBERT L. BROWN, Justice, dissenting. This case was a misdemeanor appeal in circuit court where the appellant was sentenced to two days in jail for DWI and fined. The majority has reversed her conviction and held that she was entitled to a jury

trial, though neither she nor her attorney requested one in circuit court. I disagree.

The majority is correct that the right to trial by jury is a fundamental right, time-honored and revered. In a very real sense what confronts us in this case is a delineation of that right. The question is two-fold: 1) in what cases does the right attach? and 2) under what circumstances may it be waived or forfeited?

## I. RIGHT TO TRIAL BY JURY

Under the majority's theory of the case and constitutional interpretation, trial by jury is available and inviolate in "all cases at law." Does this mean that the right attaches for all misdemeanors and small claims, regardless of the court where they are tried? Surely not. But in support of its argument the majority quotes from the Arkansas Constitution:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law, *without regard to the amount in controversy*; but a jury trial may be waived by the parties in all cases in the manner prescribed by law; and in all jury trials in *civil* cases, where as many as nine of the jurors agree upon a verdict, the verdict so agreed upon shall be returned as the verdict of such jury, provided, however, that where a verdict is returned by less than twelve jurors all the jurors consenting to such verdict shall sign the same.

Ark. Const. art.2, § 7. (Emphasis added.) Though I recognize that this section has been applied in the past to criminal offenses, as well as civil matters, I question its application to criminal prosecutions. As is the case with the Seventh Amendment to the Federal Constitution, this amendment, by its terms, contemplates the amounts involved in the controversy, or damages. It also specifically refers to "civil cases." Accordingly, I interpret the jury-trial guarantee in Section 7 as applying to civil matters — not criminal prosecutions.

The section of the Arkansas Constitution that deals with criminal prosecutions is Article 2, Section 10:

> In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by impartial jury of

the county in which the crime shall have been committed; provided that the venue may be changed to any other county of the judicial district in which the *indictment* is found, upon the application of the accused, in such manner as now is, or may be, prescribed by law; and to be informed of the nature and cause of the accusation against him, and to have a copy thereof; and to be confronted with the witnesses against him; to have compulsory process for obtaining witness in his favor, and to be heard by himself and his counsel.

Ark. Const. art 2, § 10. (Emphasis added.) In the commentary to our waiver rules for trial by jury, the fact that Section 10 applies to criminal prosecutions is brought home: "Article 2, § 10 of the Arkansas Constitution confers the right to trial by jury upon an accused. Under this provision an accused enjoys the right to a jury trial in *all* criminal prosecutions in a circuit court." Commentary to Article IX, *Arkansas Rules of Criminal Procedure*, Rule 31, p. 250.

The commentary then goes on to say that Section 10 does not distinguish between serious and petty offenses with respect to the right's attachment. This is not correct. Specific reference is made to indictments in Article 2, the clear indication being that the right to trial by jury was intended to apply to felonies. Indictments are not filed in misdemeanor cases. *See Burrow* v. *City of Hot Springs*, 85 Ark. 396, 108 S.W. 823 (1908).

The Federal Constitution has a similar guarantee for trial by jury under the Sixth Amendment, which has been applied to the states through the Fourteenth Amendment. *Duncan* v. *Louisiana*, 391 U.S. 145 (1968). The right to a jury trial under the Federal Constitution attaches to "serious" crimes. *Id*. The U.S. Supreme Court has expanded on what it means by a serious crime. *See Blanton* v. *City of North Las Vegas*, 489 U.S. 538 (1989). In *Blanton*, the issue was whether the Federal Constitution required that a jury trial be afforded for a charge brought by the State of Nevada for driving under the influence of alcohol which carried a maximum sentence of six months for first offense. The Court held that DWI in Nevada was a petty offense because it entailed a penalty of not more than six months. The Court added than an objective indicator of seriousness was the maxi-

mum penalty assessed for the crime by statute:

> [P]rimary emphasis, however, must be placed on the maximum authorized period of incarceration.
>
> . . . .
>
> Following this approach, our decision in *Baldwin*[1] established that a defendant is entitled to a jury trial whenever the offense for which he is charged carries a maximum authorized prison term of greater than six months. [Citing authority.]

489 U.S. at 542.

In the case before us, the criminal offenses that were tried *de novo* in circuit court were all misdemeanors. But first-offense DWI is punishable by a maximum prison term of one year and a fine of $150 to $1,000, even though only two days in prison were assessed in this case. Ark. Code Ann. §§ 5-65-111(a), 5-65-112(1) (1987). Under the objective test set out in *Duncan v. Louisiana, supra,* and *Blanton v. City of North Las Vegas, supra,* the crime is deemed serious due to the potential for a maximum incarceration of one year, and the constitutional right to trial by jury attaches under the Sixth Amendment. This is so, even when the applicable state constitution appears to afford the jury trial right to felonies rather than misdemeanors as the Arkansas Constitution appears to do in Article 2, Section 10. *See Duncan v. Louisiana, supra.* Hence, it is not Article 2, Section 7 or Section 10, of the Arkansas Constitution that mandates a jury trial in the case, but the Federal Constitution as interpreted by decisions of the United States Supreme Court.

## II. WAIVER OR FORFEITURE

The issue then becomes whether the right to a jury trial, which attached in this case, can be forfeited by non-compliance with our contemporaneous objection rule or whether the right can only be lost by an overt waiver in accordance with Ark. R. Crim. P. 31.1 - 31.3 Under these facts, I contend that the right can be forfeited.

---

[1] *Baldwin v. New York,* 399 U.S. 66 (1970) (plurality opinion).

As already noted, Article 2, Section 7, relates to civil cases — not criminal. Its waiver provision, as a consequence, does not control this case, as the majority maintains. Our criminal rules and our statutes provide a jury-trial waiver by the defendant which must be expressly made. Ark. Code Ann. § 16-89-108 (1987). Ark. R. Crim. P. 31.1 - 31.3. Again, though, the rules and statute must be interpreted as relating primarily to Article 2, Section 10, and Section 10 guarantees the right for felonies, not misdemeanors.[2] But, in addition, the statute and rules do not provide the *exclusive* means of losing a constitutionally protected right. That right may also be forfeited under circumstances such as we have here.

When a defendant has been charged with a felony, the right to a jury trial and the waiver provisions kick in under state law. When a defendant has been charged with a "serious" misdemeanor, the United States Supreme Court also says the right to a jury trial must be afforded. But the Court has not gone so far as to hold that with respect to all misdemeanors the right may not be forfeited under state law. A reasonable interpretation is that the right can be forfeited in certain misdemeanor cases by failure to demand it or to object to its absence. That is exactly what happened in the instant case.

Failure to object to a matter at the trial level deprives the circuit court of the opportunity of ruling on that issue, as we have noted many times. *See, e.g., Withers* v. *State*, 308 Ark. 507, 825 S.W.2d 819 (1992); *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The contemporaneous objection rule is well-entrenched in this state. For example, we said in *Withers*: "We have long been resolute in holding that a contemporaneous objection is a prerequisite to our review . . . . [Citations omitted.] Otherwise, this would give rise to a basic unfairness in that the trial court would be foreclosed from considering the point of error on appeal." 270 Ark. at 510, 606 S.W.2d at 821. Parties on appeal are, therefore, bound by the scope and nature of those arguments presented to the trial court for its consideration. *Williams* v. *State*, 304 Ark. 279, 801 S.W.2d 296 (1990).

---

[2] Ark. R. Crim. P. 31.3 does authorize a waiver by counsel in misdemeanor cases where a fine is involved.

This court has stressed that the denial of any right, even a constitutional one like due process protection, must be objected to at trial to be preserved for appeal. *See, e.g., Smith* v. *City of Little Rock*, 305 Ark. 168, 806 S.W.2d 371 (1991) [retroactive application of legislation]; *Kittler* v. *State*, 304 Ark. 344, 802 S.W.2d 925 (1991) [failure to receive notice prior to trial of filing of habitual offender charge]; *Barnes* v. *State*, 294 Ark. 369, 742 S.W.2d 925 (1988) [challenge to constitutionality of probation statute]; *Harvey* v. *State*, 292 Ark. 267, 729 S.W.2d 406 (1987) [defective recording of statement as violation of due process]; *see also Wainwright* v. *Sykes*, 433 U.S. 72, 90 (1977), where the Court noted: "If a criminal defendant thinks that an action of the state trial court is about to deprive him of a Federal Constitutional right there is every reason for following state procedure in making known his objection."

There is precedent for a situation virtually identical to our present dilemma. *See Griggs* v. *State*, 280 Ark. 339, 658 S.W.2d 371 (1983). In *Griggs*, the issue also was a misdemeanor trial before the circuit court involving third-degree burglary, and a year's sentence was given with nine months suspended. We said there that we recognized the constitutional right to a jury trial in *felony* cases, but we also stated that in *Griggs* a constitutional issue was not involved, which, implicitly, was due to the fact that the crime was a *misdemeanor*. We then held that a constitutional question must be raised in the trial court for the question to be reviewable on appeal. Since it was not raised in the trial court, it was forfeited for purposes of appeal. Thus, in *Griggs*, we squarely associated forfeiture of the right to a jury trial in a misdemeanor case with failure to object to its absence at the trial court level. The same issue now looms before us in this case. As in *Griggs*, the record is silent on the jury trial question. It may have been discussed at the circuit court level or it may not have been. We can only speculate on the matter. What we do know is that no demand or objection relating to a jury trial appears of record.

No action was taken by Calnan to preserve her right to trial by jury for DWI, a misdemeanor, and she was sentenced to two days in jail. She is presumed to have known her rights, especially when she was represented by counsel. Yet, she opted for trial before the circuit judge. It was only after conviction and on appeal to this court that she asked for a jury trial.

We go too far in mandating jury trials for misdemeanors when no jury trial has been requested and no objection made. Defense counsel and the appellant were presumed to have known the appellant's rights. By waiting until after conviction to assert a jury trial guarantee smacks of double protection. Failure to demand a right in a misdemeanor appeal must carry with it some consequences. In this case, the consequence should be forfeiture of that right.

I respectfully dissent.

HAYS and GLAZE, JJ., join.