Cite as 2019 Ark. App. 586

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-19-258

| | |
|---|---|
| DERRICK HEARD | **Opinion Delivered:** December 11, 2019 |
| APPELLANT | |
| | APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT |
| V. | [NO. 34CR-17-109] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE HAROLD S. ERWIN, JUDGE |
| | |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Derrick Heard appeals an order from the Jackson County Circuit Court denying his motion to transfer his charges to the juvenile division of the circuit court and denying his request for extended juvenile jurisdiction designation (EJJ). We affirm.

A prosecuting attorney has the discretion to charge a juvenile, sixteen years of age or older, in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2015). Given that discretion and the felony nature of the charges, the State charged Heard as an adult in the Jackson County Circuit Court with capital murder, attempted capital murder, breaking or entering, theft of property, and possession of a handgun by a minor stemming from events that took place on June 12, 2017, when Heard was sixteen years old.

On May 8, 2018, Heard filed a motion to transfer to the juvenile division of the circuit court and requested a hearing. At the hearing, the forensic psychologist who had earlier evaluated Heard to determine his fitness to proceed, Melissa Dannacher, testified that Heard had been diagnosed with ADHD and conduct disorder. She opined that during his childhood, Heard experienced family instability. Dannacher stated that she believed Heard feigned psychotic symptomatology during the evaluation and that he was competent to proceed. In the written report, Dannacher opined that at the time of the alleged offenses, Heard was not experiencing an impairing mental disease or defect and that he was able to appreciate the criminality of his behavior and had the capacity to conform his behavior to the law. The examiner testified that Heard possessed a basic understanding of the criminal proceedings against him and possessed the capacity to rationally assist with his defense. As a result of Dannacher's testimony, the court found Heard competent to proceed.

Byron Bishop, a program manager with the Arkansas Department of Human Services Division of Youth Services, testified that the agency could offer Heard educational services, medication-management services, and individual and group counseling.

Heard's mother, Gwendolyn Jarrett, testified that early in his life Heard had difficulty learning, which had caused him embarrassment and that he had behavioral issues. Jarrett explained that Heard had been prescribed medication for "posttraumatic depression" since kindergarten but that he had been off his medication since 2013. Jarrett testified that Heard was "immature for his age" and that when he was young "everything just hurt him . . . hurt his feelings." Jarrett explained that when Heard was in seventh grade, he was arrested for

theft of property; however, Jarrett stated that when Heard's son was born in February 2017, her son began making better decisions and that having a child changed him for the better.

Patrick McGee, Heard's juvenile probation officer, testified that he began supervising Heard in 2015 after Heard's theft-of-property conviction. McGee recounted that while under his supervision, Heard picked up more charges, including commercial burglary, theft of property (including firearms), and criminal mischief. McGee stated that Heard's probation had been revoked.

The court heard testimony regarding the events of June 12, 2017, from officer Scott Pillow of the Arkansas State Police. Pillow testified that when Sergeant Shane Rogers's body-camera footage was examined, it showed that numerous shots were fired at both Lieutenant Patrick Weatherford and Sergeant Rogers. Weatherford was struck one time and died from his wounds. Pillow testified that the surveillance-camera video of the Newport High School parking lot shows a person wearing black slides, white socks, a reddish shirt, and light gray or denim shorts riding a bicycle and holding a gun. Pillow testified that the video shows Weatherford pulling up in his patrol car and "bumping" the person riding the bike and the person running away on foot with Weatherford in pursuit. Pillow stated that during questioning, Heard identified himself and Weatherford in the video, and he confessed that he had shot Weatherford.

The court entered an order denying the motion to transfer and denying the request to designate this case as EJJ. Heard timely filed a notice of appeal.

Pursuant to Arkansas Code Annotated section 9-27-318(g), the circuit court shall consider all the following factors in a transfer hearing:

3

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

A designation order is a final appealable order and shall be subject to an interlocutory appeal. Ark. Code Ann. § 9-27-503(f). The circuit court is required to make written findings on all the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, at 3, 420 S.W.3d 494,

4

496. We will not reverse a circuit court's determination whether to transfer a case unless that decision is clearly erroneous. *M.R.W. v. State*, 2012 Ark. App. 591, 424 S.W.3d 355. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

After considering the evidence and testimony, the circuit court denied Heard's motion to transfer the charges to the juvenile court. In its written findings of fact, the court found that the section 9-27-318(g) factors weighed in favor of denying the motion to transfer to the juvenile court. The circuit court found that the offenses Heard was charged with were of the "utmost seriousness" and resulted in the death of a police officer. The circuit court determined that the offenses were committed against persons "culminating in a face-to-face confrontation" and the nature of the offenses and society's protection would favor prosecution in the criminal division of the circuit court. The circuit court further found that Heard acted alone and carried a weapon prior to the commission of the offense, giving greater weight to his culpability. Additionally, the court found that has a history of criminal activity and juvenile adjudications. We find no error in the circuit court's decision to deny Heard's motion to transfer.

Heard also asserts that he should have been adjudicated pursuant to EJJ. This court has explained, however, that there can be no EJJ designation unless the case either is already in the juvenile division or is transferred to the juvenile division. *J.S. v. State*, 2009 Ark. App. 710, at 5, 372 S.W.3d 370, 373. Arkansas Code Annotated section 9-27-501(a)

provides that the State "may request an extended juvenile jurisdiction designation in a delinquency petition or file a separate motion" if the case is appropriate for transfer.

Likewise, Arkansas Code Annotated section 9–27–503(e) provides that "[i]f the court denies the request for [EJJ], the court shall enter its written findings and proceed with the case as a delinquency proceeding." These statutes require that before a request for designation is considered, the case is already in the juvenile division. *See J.S.*, 2009 Ark. App. 710, at 5, 372 S.W.3d at 373; *see also Lofton v. State*, 2009 Ark. 341, 321 S.W.3d 255, (holding that because the circuit court denied request to be tried in juvenile court, EJJ was not applicable).

In this case, the circuit court denied Heard's motion to transfer his case to the juvenile division. Any argument he makes with respect to an EJJ designation is, therefore, without merit.

We affirm.

GRUBER, C.J., and HARRISON, J., agree.

*Ronald L. Davis, Jr., Law Firm, PLLC*, by: *Ronald L. Davis, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.